2005 OK CIV APP 1

**BANKERS TRUST COMPANY, as Custodian, Plaintiff/Appellee,**

v.

**Joy R. BROWN, Defendant/Third–Party Plaintiff/Appellant,**

and

**Unknown Spouse of Joy R. Brown, if any, Aisha A. Khallig, Pamela K. Holland, Vanessa L. Martin, Unknown Heirs, Executors, Administrators, Devisees, Legatees, Trustees and Assigns of Palmer Brown, Treasurer of Tulsa County, State of Oklahoma, and Board of County Commissioners of Tulsa County, State of Oklahoma, Defendants,**

v.

**Saxon Mortgage, Inc., Third–Party Defendant/Appellee.**

No. 98,594.

Court of Civil Appeals of Oklahoma,
Division No. 2.

Dec. 21, 2004.

Philip W. Redwine, Douglas B. Cubberley, Law Offices of Redwine & Cubberley, Norman, OK, for Plaintiff/Appellee and Third–Party Defendant/Appellee.

Art Fleak, Tulsa, OK, for Defendant/Third–Party Plaintiff/Appellant.

Opinion by JOHN F. REIF, Presiding Judge.

¶ 1 Defendant, Joy R. Brown, appeals from the trial court's dismissal of her counter-claims against Bankers Trust Company, and her cross-claims against Saxon Mortgage, Inc. (collectively, Lenders). The issue on appeal is whether Defendant stated a cause of action against Lenders sufficient to withstand their motions to dismiss. Upon review of the pleadings and applicable law, we conclude that the trial court's decision was correct on two theories, but in error on another. Accordingly, we affirm in part, reverse in part, and remand for further proceedings.

## FACTS AND PROCEDURAL BACKGROUND

¶ 2 On July 18, 2001, Defendant obtained a loan for $48,330 at 12.875% annual interest from Saxon Mortgage, Inc. As collateral, she executed a note and mortgage on her home at 310 East Young Street in Tulsa, Oklahoma. Defendant agreed to make payments of $529.91 per month, plus escrow amounts. That same day, Saxon assigned the note and mortgage to Bankers Trust Company.

¶ 3 Defendant missed the payment due on November 1, 2001, and apparently missed additional payments thereafter. On March 8, 2002, Bankers Trust filed a petition to foreclose on the mortgage. Defendant filed a counter-claim based on negligence and fraud, contending that the mortgage was "ill-conceived" and that Bankers Trust's agents had made intentional false representations to her. Bankers Trust filed a motion to dismiss Defendant's counter-claim. The trial court granted the motion to dismiss, but allowed Defendant to amend her counter-petition.

¶ 4 When Defendant amended her counter-petition, she added a cross-claim against Saxon. She alleged that both Lenders were liable under theories of predatory lending, negligence, fraud, negligent infliction of emotional distress, breach of the implied covenant of fair dealing, and negligent misrepresentation. Both Bankers Trust and Saxon filed motions to dismiss, which the trial court granted. The court directed that final judgment be filed to allow Defendant to appeal and she has done so.[1]

## STANDARD OF REVIEW

¶ 5 We review a trial court's grant of a motion to dismiss *de novo*. *Estate of Hicks v. Urban East, Inc.*, 2004 OK 36, ¶ 5, 92 P.3d 88, 90 (citation omitted). A motion to dismiss tests "the law of the claims, not the facts supporting them." *Id.* A claim should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle her to relief. . . . The question . . . is whether, taking

---

1. Appellant has filed a motion to file a brief on appeal. The Supreme Court has deferred consideration of that motion to this court. We deny the motion as the issues were adequately briefed to the trial court and those briefs are included in the record on appeal.

all of plaintiff's allegations as true, she is precluded from recovering as a matter of law." *Id.*

## DISCUSSION

¶ 6 In her amended counter-claims and cross-claims, Defendant asserted that, when she obtained the loan, Saxon should have known that she was not realistically able to make a mortgage payment and was not able to obtain a loan at a normal interest rate because of the location of her house. She alleged that:

> 17. The mortgage was ill-conceived, had high up front costs, and a high interest (12.875%) rate, and the Third-party-defendant, being in the mortgage business, should have realized this, yet entered into the mortgage, according to the Defendant's belief, in order to charge higher interest rates, high outlandish up front fees, and to subsequently, and surely, foreclose on the mortgage, and sell the property for profit, all to the great detriment and loss of the Defendant.

Defendant asserted that these facts gave rise to a claim based on theories of predatory lending, negligence, fraud, and violation of the implied covenant of fair dealing.

¶ 7 Defendant also asserted that Bankers Trust, as the successor to Saxon, is in the same position relative to her claims. Lenders have not countered this assertion. Although Lenders filed separate motions to dismiss, their arguments were identical. We conclude that Defendant has stated a claim such that her counter-petition and cross-petition should have survived Lenders' motions to dismiss.

## I. Predatory Lending

■■■ ¶ 8 Defendant's primary assertion is that Lenders have engaged in predatory lending, by using "reverse redlining." "Redlining is 'the practice of denying the extension of credit to specific geographic areas due to the income, race, or ethnicity of its residents.'" *Hargraves v. Capital City Mort-*

*gage Corp.,* 140 F.Supp.2d 7, 20 (D.D.C.2000) (quoting *United Cos. Lending Corp. v. Sargeant,* 20 F.Supp.2d 192, 203, n. 5 (D.Mass. 1998)). " 'Reverse redlining is the practice of extending credit on unfair terms to those same communities.'" *Id.* To establish a claim for reverse redlining, a party must show that a lender's lending practices and loan terms were unfair and predatory, and that the lender intentionally targeted its borrowers based on race or its actions had a disparate impact on the basis of race. *Id.* (citation omitted).

■■■ ¶ 9 Predatory lending is prohibited under the federal Home Ownership and Equity Protection Act (HOEPA). 15 U.S.C. § 1639(h) (1998). Section 1639(h) provides:

> A creditor shall not engage in a pattern or practice of extending credit to consumers under mortgages referred to in section 1602(aa) of this title based on the consumers' collateral without regard to the consumers' repayment ability, including the consumers' current and expected income, current obligations, and employment.

Predatory lending practices can include the following:

> ... exorbitant interest rates, lending based on the value of the asset securing the loan rather than a borrower's ability to repay ("equity-stripping," in other words issuing a loan "designed to fail" and profiting by acquiring the property through default, rather than by receiving loan payments), repeated foreclosures, and loan servicing procedures in which excessive fees are charged.

*Hargraves,* 140 F.Supp.2d at 20–21.

■■■ ¶ 10 Defendant has asserted that Lenders engaged in just such practices. She has asserted that her property was in a blighted area, that the interest rate and closing fees she was charged were exorbitant,[2] that she had no ability to repay the loan, and that Lenders issued a loan "designed to fail," with the intent to recover the value of the loan through foreclosure rather than repayment.

---

**2.** In the portions of their motions to dismiss addressed to Defendant's theory of fraud, both Lenders assert that, out of a loan for $48,330,

Defendant would have received over $40,000 in cash, which translates to over 17% in closing costs.

¶ 11 Lenders have not responded to Defendant's assertion of predatory lending.[3] Instead, they have focused on Defendant's theories of fraud and negligence. Nevertheless, it is Defendant's theory of predatory lending that most clearly should have survived Lenders' motions to dismiss, based *both* her factual allegations *and* the right of private civil action given by 15 U.S.C.A. § 1640 for enforcement of the Consumer Credit Protection Act, which includes § 1639(h). While Defendant has yet to prove her claim, we cannot conclude that, based on the allegations she has made, Defendant is "precluded from recovering as a matter of law" on her theory of predatory lending. *See Hicks,* 2004 OK 36, ¶ 5, 92 P.3d at 90.

## II. Negligence

¶ 12 Defendant has also alleged that Lenders are liable under the theory of negligence. Although she states them as separate theories of recovery, Defendant's theories of negligent misrepresentation and negligent infliction of emotional distress are but different ways of stating the same theory of negligence. *See Mason v. State ex rel. Bd. of Regents of the Univ. of Okla.,* 2001 OK CIV APP 33, ¶ 11, 23 P.3d 964, 969 (negligent infliction of emotional distress is not an independent tort, but a form of negligence).

¶ 13 Lenders have cited to numerous cases holding that a bank does not have a duty to ensure that its customer has the financial ability to repay a loan.[4] However, the federal act known as HOEPA, discussed above, imposes such a duty toward economically vulnerable parties. Lenders did not address the effect of HOEPA on their duty to borrowers like Defendant and we may not do so here for the first time on appeal. *See Evers v. FSF Overlake Assocs.,* 2003 OK 53, ¶¶ 19–20, 77 P.3d 581, 587. We do observe, however, that the duty underlying Defendant's negligence-based theories is founded only on section 1639(h) of HOEPA. The negligence-based theories differ from her main predatory lending claim to the extent that she seeks to impose liability on Lenders for their failure to use reasonable care to avoid lending practices or arrangements that violate section 1639(h). However, we again stress it is the alleged violation of the federal statute which states a claim, and not the allegations of common law tort. Dismissal of the claim based on common law negligence was not error.

## III. Fraud

¶ 14 "Actionable fraud consists of a false material representation made as a positive assertion which is known either to be false, or made recklessly without knowledge of the truth [or falsity], with the intention that it be acted upon, and which is relied upon by a party to his/her detriment." *Tice v. Tice,* 1983 OK 108, ¶ 7, 672 P.2d 1168, 1171 (footnote omitted). Constructive fraud is "the concealment of material facts which one is bound under the circumstances to disclose." *Varn v. Maloney,* 1973 OK 133, ¶ 18, 516 P.2d 1328, 1332 (citation omitted); *see*

3. Bankers Trust asserted that Defendant waived compulsory counter-claims by failing to raise them in her original answer to its petition. 12 O.S.2001 § 2013(A). However, Defendant did, in fact, timely file her counter-claim against Bankers Trust. The fact that she later added a new theory in support of that claim does not create a new claim. *See Fleet v. Sanguine, Ltd.,* 1993 OK 76, ¶ 15, 854 P.2d 892, 901. Moreover, "[i]n view of the beneficent purposes served by [section 2013(A)], the court is not justified in hindering its use by an overly restrictive construction." *Okla. Gas & Elec. Co. v. Dist. Court, Fifteenth Judicial Dist., Cherokee County,* 1989 OK 158, ¶ 11, 784 P.2d 61, 64 (footnote omitted).

4. *First Nat'l Bank in Durant v. Honey Creek Entm't Corp.,* 2002 OK 11, ¶ 19, 54 P.3d 100, 105–06; *Cogan v. Triad Am. Energy,* 944 F.Supp. 1325, 1329 (S.D.Tex.1996); *N. Trust Co. v. VIII S. Mich. Assocs.,* 276 Ill.App.3d 355, 212 Ill.Dec. 750, 657 N.E.2d 1095, 1102 (1995); *Resolution Trust Corp. v. BVS Dev., Inc.,* 42 F.3d 1206, 1214 (9th Cir.1994); *F.D.I.C. v. Smith,* 848 F.Supp. 1053, 1057 (D.Mass.1994); *Nelson v. Prod. Credit Ass'n of the Midlands,* 930 F.2d 599, 605 (8th Cir.), *cert. denied,* 502 U.S. 957, 112 S.Ct. 417, 116 L.Ed.2d 438 (1991); *In re Fordham,* 130 B.R. 632, 646 (Bankr.D.Mass.1991); *Nymark v. Heart Fed. Sav. & Loan Ass'n,* 231 Cal.App.3d 1089, 283 Cal.Rptr. 53, 59 (1991); *Commercial Nat'l Bank in Shreveport v. Audubon Meadow P'ship,* 566 So.2d 1136, 1140 (La.Ct.App.1990); *Prod. Credit Ass'n v. Croft,* 143 Wis.2d 746, 423 N.W.2d 544, 548 (Ct.App.1988); and *Wagner v. Benson,* 101 Cal.App.3d 27, 161 Cal.Rptr. 516, 521 (1980).

*also* 15 O.S.2001 § 59(1). However, "[a]n action for fraud may not be predicated on false statements when the allegedly defrauded party could have ascertained the truth with reasonable diligence." *Silver v. Slusher*, 1988 OK 53, ¶ 6, 770 P.2d 878, n.8, 770 P.2d 878, 881 (citations omitted) (emphasis omitted).

¶ 15 Defendant asserts that Lenders made fraudulent representations to her that a 12.875% interest rate was reasonable and that the loan terms and monthly payments were reasonable relative to her financial situation. Defendant asserts that she reasonably and justifiably relied on those representations.

¶ 16 In reviewing these allegations, we note that the reasonableness of loan transaction in question is measured by section 1639(h) and any representations concerning the reasonableness of the loan are simply a factor in determining liability under section 1639(h), not an independent basis of liability. Stated another way, but for section 1639(h), a lender's opinion about the reasonableness of its terms and practices would be mere marketplace puffing. The motion to dismiss was properly granted on Defendant's fraud claim.

## IV. Violation of Implied Covenant of Fair Dealing

¶ 17 We reach a similar conclusion with respect to Defendant's claim for tortious breach of contract based on violation of the implied duty to deal fairly and in good faith. Tort liability for breach of this implied covenant was fashioned by the courts to protect the special relationship between an insurer and an insured, and because of the breach of the implied covenant caused detriment beyond the economic benefits of the insurance contract. *See Christian v. Home Assurance Co.*, 1977 OK 141, ¶ 9, 577 P.2d 899, 902. The Oklahoma Supreme Court has been reluctant "to expand [the] *Christian*

holding to banking relationships" and has expressly stated the "holding in *Christian* ... does not generally apply to the relationship between a bank and its customer." *First Nat'l Bank and Trust v. Kissee*, 1993 OK 96, ¶ 25, 859 P.2d 502, 509, *citing Rodgers v. Tecumseh Bank*, 1988 OK 36, ¶ 16, 756 P.2d 1223, 1227. Judicial extension of *Christian* liability to a debtor-creditor relationship like that between Defendant and Lenders in the instant case is likewise not necessary, because (1) section 1639(h) has provided statutory protection in such cases, and (2) the courts have recognized tort recovery from a lender who disregards, either intentionally or negligently, the protection extended by section 1639(h).

## CONCLUSION

¶ 18 Defendant stated a claim against Lenders for alleged intentional and negligent violation of section 1639(h). That is not to say that she has established her right to recovery, but we cannot say that "she is precluded from recovering as a matter of law." *Hicks*, 2004 OK 36, ¶ 5, 92 P.3d at 90 (citation omitted). In contrast, we hold Defendant's other theories of fraud and breach of the implied covenant of fair dealing and good faith were not sufficiently pleaded to withstand a motion to dismiss.

¶ 19 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS.

STUBBLEFIELD, C.J. (sitting by designation), and GOODMAN, J. (sitting by designation), concur.