OSCN Found Document:WEAVER v. DOE

 
 
 

 
 
 
 
 
 
 
 

 


 
 
 
 
 
 


 
 OSCN navigation


 
 
 Home

 
 Courts

 
 
 Court Dockets
 

 
 Legal Research

 
 Calendar

 
 Help
 
 





 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 
 
 

 
 
 
 WEAVER v. DOE
2016 OK CIV APP 30
Case Number: 113532
Decided: 04/11/2016
Mandate Issued: 05/04/2016
DIVISION IV
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION IV
Cite as: 2016 OK CIV APP 30, __ P.3d __

 

BRENDA G. WEAVER, as Power of Attorney of VIRGINIA QUAY WEAVER, Plaintiff/Appellee,
v.
JOHN DOE, individually, and JOHN DOE, as Agent of PEAK MEDICAL OKLAHOMA NO. 3, INC., d/b/a FOREST HILLS CARE AND REHABILITATION CENTER, Defendants/Appellants.

APPEAL FROM THE DISTRICT COURT OF
TULSA COUNTY, OKLAHOMA

HONORABLE LINDA G. MORRISSEY, TRIAL JUDGE

REVERSED AND REMANDED WITH DIRECTIONS

Mark S. Stanley, STANLEY & MYERS, Tulsa, Oklahoma, for Plaintiff/Appellee
Margaret M. Clarke, John T. Richer, Kristen P. Evans, HALL, ESTILL, HARDWICK, GABLE, GOLDEN & NELSON, P.C., Tulsa, Oklahoma, for Defendants/Appellants

JANE P. WISEMAN, PRESIDING JUDGE:

¶1 Peak Medical Oklahoma No. 3, Inc., d/b/a Forest Hills Care and Rehabilitation Center, appeals a trial court order denying its motion to dismiss, or in the alternative, motion to compel arbitration and stay the judicial proceedings in this negligence action. After reviewing the record on appeal and applicable law, we reverse and remand with directions.

FACTS AND PROCEDURAL BACKGROUND

¶2 Brenda G. Weaver, as power of attorney for Virginia Quay Weaver, filed a petition on June 18, 2013, against John Doe and John Doe as agent of Forest Hills, alleging caretaker neglect causing injury to Virginia while she was a resident at Forest Hills. Forest Hills filed an answer on August 8, 2014, admitting some facts stated in the petition, denying others, and claiming insufficient knowledge of the remaining facts. Forest Hills also asserted numerous affirmative defenses.

¶3 Forest Hills filed a motion to dismiss, or in the alternative, a motion to compel arbitration and stay the case. Forest Hills states that Virginia was admitted to the facility on two occasions----on February 2, 2012, and again on October 5, 2012. On each of these occasions, in addition to an "Admission Agreement," Brenda signed on behalf of Virginia an "Oklahoma Long-Term Care Arbitration Agreement" pursuant to which she agreed to submit all disputes to arbitration. According to Forest Hills, these Arbitration Agreements are identical, voluntary, not a pre-condition of admission to the facility, and contained a 30-day revocation period. Forest Hills further alleges, "The Agreements require the claimant to make a written demand for arbitration in writing and to serve the demand on the other party via certified mail, return receipt requested." Forest Hills claims Brenda filed this lawsuit instead of making a written demand and that the lawsuit should therefore be dismissed.

¶4 In her response, Brenda stated her opposition to the motion to dismiss/compel and requested an evidentiary hearing, or in the alternative, a motion to continue. She asserted the Federal Arbitration Act does not apply because "[t]he issue of the enforceability of arbitration agreements in the nursing home context has already been litigated and decided by the Oklahoma Supreme Court in Bruner v. Timberlane Manor Limited Partnership, 2006 OK 90 [155 P.3d 16]." Brenda contends this arbitration agreement is unenforceable pursuant to the holding in Bruner.

¶5 In its reply, Forest Hills cites the United States Supreme Court case of Marmet Health Care Center, Inc. v. Brown, ___ U.S.___, 132 S. Ct. 1201, 182 L. Ed. 2d 42 (2012), involving arbitration agreements in states with laws prohibiting arbitration agreements in the context of nursing homes, a case in which the Court found the FAA pre-empts the state anti-arbitration statutes.

¶6 On December 3, 2014, the trial court in a minute order without oral argument denied Forest Hills' motion to dismiss/compel. Forest Hills filed a motion to reconsider the denial of the motion to compel, or to set an evidentiary hearing. On December 31, 2014, Forest Hills filed this appeal. Forest Hills filed an amended petition in error on January 26, 2015, attaching an order filed January 22, 2015, denying the motion to dismiss/motion to compel. The trial court later granted Forest Hills' motion to stay the proceedings pending appeal.[1]

¶7 Forest Hills appeals.

STANDARD OF REVIEW

¶8 "We review an order granting or denying a motion to compel arbitration de novo, the same standard of review employed by the trial court." Thompson v. Bar-S Foods Co., 2007 OK 75, ¶ 9, 174 P.3d 567. "Arbitration should be compelled unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." Id.

ANALYSIS

¶9 The Federal Arbitration Act (FAA) "applies to contracts affecting interstate commerce. 9 U.S.C. § 1 (2000)." Rogers v. Dell Computer Corp., 2005 OK 51, ¶ 11, 138 P.3d 826. "The FAA reflects the fundamental principle that arbitration is a matter of contract." Rent-A-Center, W., Inc. v. Jackson, 561 U.S. 63, 67, 130 S. Ct. 2772, 2776, 177 L. Ed. 2d 403 (2010). "The FAA thereby places arbitration agreements on an equal footing with other contracts . . . and requires courts to enforce them according to their terms." Id. (citations omitted). "Like other contracts, however, they may be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability.'" Id. (quoting Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 687, 116 S. Ct. 1652, 134 L. Ed. 2d 902 (1996)).

¶10 The FAA, at 9 U.S.C. §§ 2, provides:

A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

(Emphasis added.)

¶11 The Arbitration Agreement (the Agreement) signed by Brenda on October 5, 2012, provides:

B. AGREEMENT TO ARBITRATE "DISPUTES": Any and all claims or controversies arising out of or in any way relating to this Agreement, the Admission Agreement or any of the resident's stays at this Facility, or any facility operated by any subsidiary of Sun Healthcare Group, Inc., whether or not related to medical malpractice, including but not limited to disputes regarding the making, execution, validity, enforceability, voidability, unconscionability, severability, scope, interpretation, preemption, waiver, or any other defense to enforceability of this Agreement or the Admission Agreement, whether arising out of State or Federal law, whether existing now or arising in the future, whether for statutory, compensatory, or punitive damages and whether sounding in breach of contract, tort or breach of statutory duties (including, without limitation except as indicated in this Agreement or any other agreement signed between these parties, any claim based on Residents' Rights or a claim for unpaid facility charges), irrespective of the basis for the duty or of the legal theories upon which the claim is asserted, shall be submitted to binding arbitration.

Section C of the Agreement provides, in part:

4. FAA: The parties hereby expressly agree that this Agreement, the Admission Agreement and the Resident's stay at the Facility substantially involve interstate commerce, and stipulate that the Federal Arbitration Act ("FAA") shall apply to this Agreement, and shall preempt any inconsistent State law and shall not be reverse preempted by the McCarran-Ferguson Act; United States Code Title 15, Chapter 20, or other law.

The Agreement states that it may be cancelled by written notice within 30 days of the date of admission and further provides, "If you do not accept this Agreement, you will still be allowed to live in, and receive services in, this Facility." On the page preceding the signature page, the Agreement states:

BY SIGNING THIS CONTRACT YOU ARE AGREEING TO HAVE ANY DISPUTE DECIDED BY NEUTRAL ARBITRATION AND YOU ARE GIVING UP YOUR RIGHT TO A JURY OR COURT TRIAL. NOTE THAT PROCEEDINGS PURSUANT TO 42 U.S.C. §§ 1396r(c)(2), (f)(3) and 42 C.F.R. § 431.245 WILL NOT BE SUBJECT TO ARBITRATION IF SO PROVIDED BY STATE LAW.

¶12 The Oklahoma Nursing Home Care Act (NHCA) directly addresses such agreements in nursing home contracts. Title 63 O.S.2011 § 1-1939 provides, in part:

A. The owner and licensee are liable to a resident for any intentional or negligent act or omission of their agents or employees which injures the resident. In addition, any state employee that aids, abets, assists, or conspires with an owner or licensee to perform an act that causes injury to a resident shall be individually liable.

B. A resident may maintain an action under the Nursing Home Care Act for any other type of relief, including injunctive and declaratory relief, permitted by law.

C. Any damages recoverable under this section, including minimum damages as provided by this section, may be recovered in any action which a court may authorize to be brought as a class action. The remedies provided in this section, are in addition to and cumulative with any other legal remedies available to a resident. Exhaustion of any available administrative remedies shall not be required prior to commencement of suit hereunder.

D. Any waiver by a resident or the legal representative of the resident of the right to commence an action under this section, whether oral or in writing, shall be null and void, and without legal force or effect.

E. Any party to an action brought under this section shall be entitled to a trial by jury and any waiver of the right to a trial by a jury, whether oral or in writing, prior to the commencement of an action, shall be null and void, and without legal force or effect.

F. A licensee or its agents or employees shall not transfer, discharge, evict, harass, dismiss or retaliate against a resident, a resident's guardian or an employee or agent who makes a report, brings, or testifies in, an action under this section, or files a complaint because of a report, testimony or complaint.

(Emphasis added.)

¶13 The issue of an arbitration agreement in the context of a nursing home admission was addressed in Bruner v. Timberlane Manor Limited Partnership, 2006 OK 90, 155 P.3d 16, in which the Oklahoma Supreme Court held that the Oklahoma NHCA controlled over the Oklahoma Uniform Arbitration Act and the FAA did not apply. The Court found the FAA inapplicable for these reasons:

First, the arbitration agreement calls for Oklahoma law to govern. Second, Congress regulates nursing homes through its spending power rather than its power over interstate commerce. Third, Congress, in its nursing home regulations, left the states to devise the appropriate administrative or judicial review of nursing home residents' claims against nursing homes. Fourth, the evidence in this case is insufficient to connect the nursing home admission contract with interstate commerce under extant jurisprudence from the United States Supreme Court.

Id. ¶ 47. The Court further determined "Oklahoma's Nursing Home Care Act governs over Oklahoma's Uniform Arbitration Act in this case." Id. The Court held "the district court did not err in denying the motion to compel arbitration and stay proceeding." Id.

¶14 In Bruner, the nursing home resident's daughter, as the resident's attorney in fact, signed a contract for admission to the nursing home which included an arbitration agreement. The Court noted:

The state counterpart to § 2 of the FAA is § 1857(A) of the OUAA. It provides that arbitration agreements shall be valid, enforceable and irrevocable except upon a ground that exists at law or in equity for the revocation of a contract. 12 O.S.Supp.2005, § 1857(A). This section is a clear expression of Oklahoma's policy favoring arbitration agreements. See, Voss v. City of Oklahoma City, 1980 OK 148, 618 P.2d 925; Rollings v. Thermodyne Indust., Inc., 1996 OK 6, 910 P.2d 1030.

On the other hand, § 1-1939 of the Nursing Home Care Act conflicts with the command of § 1857 of the OUAA. It provides that any waiver of the right to commence an action against the nursing home owner or licensee for any intentional or negligent act or omission shall be null and void and without legal effect. 63 O.S.2001, § 1-1939. It is a clear rejection of arbitration agreements between nursing homes and their residents.

Id. ¶¶ 23-24.

¶15 The arbitration sections in Bruner provided:

NOTICE: BY SIGNING THIS AGREEMENT THE RESIDENT AGREES TO HAVE ANY RESIDENT/GLC [Grace Living Center] DISPUTE DECIDED BY NEUTRAL BINDING ARBITRATION AND WAIVES ANY RIGHT TO TRIAL IN A COURT OF LAW OR EQUITY; PROVIDED; HOWEVER, THAT THE PARTIES MAY RESOLVE ANY RESIDENT/GLC DISPUTE BY NEGOTIATION BY AND BETWEEN THEMSELVES OR BY USE OF AN AGREED UPON THIRD PARTY MEDIATOR.

Id. at n. 1.

¶16 The nursing home in Bruner argued "the FAA preempts and displaces the state's anti-arbitration statute in the Oklahoma Nursing Home Care Act at 63 O.S.2001, § 1-1939(D) and (E)." Id. ¶ 5. The Court explained that § 1-1939 "is a clear rejection of arbitration agreements between nursing homes and their residents" Id. ¶ 24. The Court found that "the specific statute in the Nursing Home Care Act addressing the right to commence an action and to have a jury trial must govern over the more general statute favoring arbitration." Id. ¶ 25.

¶17 The Court noted that the arbitration agreement at issue chose Oklahoma law as the governing law:

The record before us indicates that the parties selected Oklahoma law to govern the arbitration provisions. The appellate record contains only the two-page dispute resolution part of the nursing home admission contract and the signature page. The dispute resolution part (arbitration agreement) does not mention the FAA, although it acknowledges "that Oklahoma law, as well as decisions of the United States Supreme Court, favor the enforcement of valid arbitration provisions." It does, however, in at least eight different places, provide that arbitration shall be governed by Oklahoma law.

Id. ¶ 40.

¶18 On the question of whether the transaction involved interstate commerce bringing it within the purview of the FAA, the Court stated, "The nursing home admission contract in this case involved a profoundly local transaction----in state nursing home care provided to an Oklahoma individual by an Oklahoma entity licensed under Oklahoma law." Id. ¶ 43. The Court noted that there is a three-prong test to determine whether an arbitration agreement is governed by the interstate commerce provision of the FAA:

The FAA reaches arbitration agreements in contracts evidencing a transaction that is 1) economic activity, 2) which in aggregate is a general practice subject to control under the Commerce Clause, and 3) which in aggregate has a substantial impact on interstate commerce. We acknowledge that nursing home care for a fee is economic activity.

Id. The Court concluded the transaction in Bruner failed the last two prongs. Id.

¶19 The Court further found:

Even if the nursing home's admission contract were within the broad reach of the Commerce Clause, the FAA's mandate has been overridden by a contrary congressional command. See, Shearson/American Express, Inc. v. McMahon, 482 U.S. at 226-227, 107 S.Ct. at 2337. Consistent with the federal statute permitting the states to devise a fair mechanism for hearing appeals on transfers and discharges of residents from nursing facilities, 42 U.S.C. § 1396r(c)(2) and (f)(3), the appeal procedure regulations provide that a resident has a right to agency hearings and judicial review as allowed by state law. 42 C.F.R. § 431.245. Under state law, the arbitration agreement is unenforceable. This result is consistent with the federal Medicare/Medicaid regulatory agency's finding of conflict between the Medicaid regulations and binding arbitration, implying that arbitration proceedings are antithetical to the federal goal of protecting dependent nursing home patients from abuse and neglect. The district court did not err when it found § 1-1939(D) and (E) apply to this arbitration agreement and render it unenforceable.

Id. ¶ 46.

¶20 Brenda asserts the Bruner holding controls in this case. Forest Hills disagrees, maintaining this case is controlled by Marmet Health Care Center, Inc. v. Brown, ___ U.S. ___, 132 S. Ct. 1201, 182 L. Ed. 2d 42 (2012). In Marmet, the United States Supreme Court held that a West Virginia statute prohibiting "predispute agreements to arbitrate personal-injury or wrongful-death claims against nursing homes is a categorical rule prohibiting arbitration of a particular type of a claim, and that rule is contrary to the terms and coverage of the FAA." Id. at 1204.

¶21 The Marmet decision involved three negligence lawsuits brought in West Virginia in which a family member signed an agreement with a nursing home on behalf of a patient. Id. at 1202. In two of the cases, the agreements were identical and "included a clause requiring the parties to arbitrate all disputes, other than claims to collect late payments owed by the patient." Id. at 1203. The contracts in these cases also "included a provision holding the party filing the arbitration responsible for paying a filing fee in accordance with the Rules of the American Arbitration Association fee schedules." Id. The third agreement included an arbitration clause, to which there were no exceptions, and made no mention of filing fees. Id. In each case, when the patient died, a family member brought suit in state court alleging negligent care by the nursing home. Id. According to the West Virginia Court in Brown ex rel. Brown v. Genesis Healthcare Corp., 724 S.E.2d 250, 267 (2011) cert. granted, judgment vacated sub nom. Marmet Health Care Center, Inc. v. Brown, 132 S. Ct. 1201, 182 L. Ed. 2d 42 (2012), this was the issue before the West Virginia Court:

Is West Virginia Code § 16--5C--15(c), which provides in pertinent part that "[a]ny waiver by a resident or his or her representative of the right to commence an action under this section, whether oral or in writing, shall be null and void as contrary to public policy," preempted by the Federal Arbitration Act, 9 U.S.C. § 1 et seq., when a nursing home resident's representative has executed an arbitration agreement as part of the nursing home's admission documents and the arbitration agreement contains the following terms and conditions:

a. the arbitration agreement applies to and binds both parties by its terms;

b. the arbitration agreement contains language in upper case typescript stating as follows: "THE PARTIES UNDERSTAND AND AGREE THAT BY ENTERING THIS ARBITRATION AGREEMENT THEY ARE GIVING UP AND WAIVING THEIR CONSTITUTIONAL RIGHT TO HAVE ANY CLAIM DECIDED IN [A] COURT OF LAW BEFORE A JUDGE AND A JURY."; and

c. the resident's representative is specifically advised that she has the right to seek legal counsel concerning the arbitration agreement, the execution of the arbitration agreement is not a pre-condition to admission to the nursing home facility, and the arbitration agreement may be rescinded by the resident through written notice to the facility within thirty (30) days of signing the arbitration agreement.

The statutory language in Oklahoma's 63 O.S.2011 § 1-1939(D) is substantially the same as the law cited by the West Virginia Court.

¶22 The West Virginia Supreme Court of Appeals held in a decision involving all three cases "that 'as a matter of public policy under West Virginia law, an arbitration clause in a nursing home admission agreement adopted prior to an occurrence of negligence that results in a personal injury or wrongful death, shall not be enforced to compel arbitration of a dispute concerning the negligence.'" Marmet, 132 S. Ct. at 1203. According to the U.S. Supreme Court, the West Virginia Court concluded Congress did not intend for the FAA to apply "to personal injury or wrongful death suits that only collaterally derive from a written agreement that evidences a transaction affecting interstate commerce." Id. The West Virginia Court held "that the FAA does not pre-empt the state public policy against predispute arbitration agreements that apply to claims of personal injury or wrongful death against nursing homes." Id.

¶23 The Supreme Court disagreed with the West Virginia Court's conclusion:

The West Virginia court's interpretation of the FAA was both incorrect and inconsistent with clear instruction in the precedents of this Court. The FAA provides that a "written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The statute's text includes no exception for personal-injury or wrongful-death claims. It "requires courts to enforce the bargain of the parties to arbitrate." Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 217, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985). It "reflects an emphatic federal policy in favor of arbitral dispute resolution." KPMG LLP v. Cocchi, 565 U.S. --------, --------, 132 S.Ct. 23, 25, 181 L.Ed.2d 323 (2011) (per curiam) (quoting Mitsubishi Motors Corp. v. Soler Chrysler--Plymouth, Inc., 473 U.S. 614, 631, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985); internal quotation marks omitted).

As this Court reaffirmed last Term, "[w]hen state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA." AT & T Mobility LLC v. Concepcion, 563 U.S. --------, --------, 131 S.Ct. 1740, 1747, 179 L.Ed.2d 742 (2011). That rule resolves these cases. West Virginia's prohibition against predispute agreements to arbitrate personal-injury or wrongful-death claims against nursing homes is a categorical rule prohibiting arbitration of a particular type of claim, and that rule is contrary to the terms and coverage of the FAA. See ibid. See also, e.g., Preston v. Ferrer, 552 U.S. 346, 356, 128 S.Ct. 978, 169 L.Ed.2d 917 (2008) (FAA pre-empts state law granting state commissioner exclusive jurisdiction to decide issue the parties agreed to arbitrate); Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 56, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995) (FAA pre-empts state law requiring judicial resolution of claims involving punitive damages); Perry v. Thomas, 482 U.S. 483, 491, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987) (FAA pre-empts state law requirement that litigants be provided a judicial forum for wage disputes); Southland Corp. v. Keating, 465 U.S. 1, 10, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984) (FAA pre-empts state financial investment statute's prohibition of arbitration of claims brought under that statute).

Id. at 1203-04 (emphasis added). The Supreme Court remanded the case for the West Virginia Court to "consider whether, absent that general public policy, the arbitration clauses in [two of the three cases] are unenforceable under state common law principles that are not specific to arbitration and pre-empted by the FAA." Id. at 1204.

¶24 Forest Hills argues that the trial court's erroneous denial of its motion to compel arbitration requires reversal. It asserts Brenda agreed on Virginia's behalf to arbitrate any claims she may have against Forest Hills and that she further agreed that the parties' agreements substantially involve interstate commerce and that the FAA applied. It further claims Brenda freely entered into the Agreement, although she was not required to do so to admit Virginia to the nursing home, and that Brenda "clearly intended that her mother receive the benefits of the Arbitration Agreements when she signed them; she is thus bound." Forest Hills asserts that the FAA governs this dispute and the decision in Bruner is contrary to the Supreme Court's holding in Marmet.

¶25 Marmet makes clear that the categorical prohibition against arbitration agreements like the one here under the Oklahoma NHCA and contained in § 1-1939 is displaced by the FAA. We must conclude that § 1-1939, and the holding of Bruner that this provision is not pre-empted by the FAA, are inconsistent with Marmet and cannot be applied in this case.

¶26 Further, in Bruner, the Court found that the agreement under consideration clearly stated that Oklahoma law applied to the agreement. That is not the case here. The Agreement between Brenda and Forest Hills explicitly states the FAA applies and pre-empts any inconsistent state law. The Agreement also provides that the arbitrator must apply the NAF's Code of Procedure, the Federal Rules of Evidence and state substantive law.

¶27 The basis for the trial court's denial of the motion to compel arbitration is not stated. Based on Marmet's holding and the parties' Agreement that the FAA applies, § 1-1939 cannot constitute the sole basis for denying arbitration, so this matter is governed by the FAA if no other circumstance under state law exists to invalidate the arbitration provision.

¶28 As a ground for denying arbitration, Brenda argues both to the trial court and on appeal that the Agreement is overreaching, unconscionable, and unenforceable. The Agreement itself reserves these issues for arbitration, and there is clear precedent that when the validity and enforceability of the entire agreement are contested, these questions are to be resolved by the arbitrator, not by the court.

¶29 The United States Supreme Court in Rent-A-Center, West, Inc. v. Jackson, 561 U.S. 63, 130 S. Ct. 2772, 177 L. Ed. 2d 403 (2010), confronted facts similar to our case, albeit in the context of an employment discrimination case rather than nursing home care. Rent-A-Center addressed whether the court or the arbitrator had the authority to determine Jackson's claim that the separate arbitration agreement he signed as a condition of his employment was unconscionable and therefore unenforceable under Nevada law. The Court concluded that because Jackson challenged the validity of the entire arbitration agreement, not just its provision delegating to the arbitrator the "gateway" question of enforceability, the arbitrator had the exclusive authority to decide the unconscionability issue.[2] Id. at 72, 130 S. Ct. at 2779. If Jackson had challenged as unconscionable the delegation provision specifically, the issue would fall to the court for resolution. Otherwise, the challenge to the arbitration agreement as a whole falls to the arbitrator. Id. Under similar circumstances in our case, we do not see how we might arrive at a different result. Brenda's challenge to the entire Agreement to arbitrate makes this a question for the arbitrator, not for the court.

CONCLUSION

¶30 The trial court's order denying the motion to compel arbitration is reversed, and the case remanded with directions to grant the motion to compel arbitration.

¶31 REVERSED AND REMANDED WITH DIRECTIONS.

GOODMAN, C.J., and FISCHER, J., concur.

FOOTNOTES

[1] Although Forest Hills filed a motion to reconsider and it does not appear the trial court ruled on the motion, Forest Hills later asked the trial court for a stay of proceedings, which the trial court granted. Given the trial court's stay of proceedings until disposition of the appeal, we will address the issues raised on appeal even though the trial court has not ruled on the motion to reconsider.

[2] The Court, referring to several of its earlier cases, stated that "the arbitration provisions sought to be enforced in those cases were contained in contracts unrelated to arbitration----[generally contracts for services]. . . . In this case, the underlying contract is itself an arbitration agreement. But that makes no difference." Rent-A-Center, West, Inc. v. Jackson, 561 U.S. 63, 72, 130 S. Ct. 2772, 2779, 177 L. Ed. 2d 403 (2010).






 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Supreme Court Cases
 Cite
Name
Level

 1996 OK 6, 910 P.2d 1030, 67 OBJ 399, Rollings v. Thermodyne Industries, Inc.
Discussed
 2005 OK 51, 138 P.3d 826, ROGERS v. DELL COMPUTER CORPORATION
Discussed
 2006 OK 90, 155 P.3d 16, BRUNER v. TIMBERLANE MANOR LIMITED PARTNERSHIP
Discussed at Length
 2007 OK 75, 175 P.3d 567, THOMPSON v. BAR-S FOODS COMPANY
Cited
 1980 OK 148, 618 P.2d 925, Voss v. City of Oklahoma City
Discussed
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 1857, Enforceability, Interpretation of Arbitration Agreements - Arbitration Proceeding During Dispute Over Agreement
Cited
Title 63. Public Health and Safety
 Cite
Name
Level

 63 O.S. 1-1939, Liability to Residents - Injunctive and Declaratory Relief - Damages - Waiver of Rights - Jury Trial - Retaliation Against Residents - Immunity - Report of Abuse or Neglect
Discussed at Length