OSCN Found Document:BEVERLY THOMPSON, Next Friend of CHARLENE HUGHES, an Individual v. HEARTWAY CORPORATION

 

 
 

 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 BEVERLY THOMPSON, Next Friend of CHARLENE HUGHES, an Individual v. HEARTWAY CORPORATION
2025 OK 65
Case Number: 121922
Decided: 10/07/2025
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2025 OK 65, __ P.3d __

 

NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

BEVERLY THOMPSON, Next Friend of CHARLENE HUGHES, an Individual, Plaintiff/Appellant,
v.
HEARTWAY CORPORATION d/b/a MEMORIAL HEIGHTS NURSING CENTER, a Foreign Corporation, Defendant/Appellee.

 

ON APPEAL FROM THE DISTRICT COURT OF McCURTAIN COUNTY, OKLAHOMA
THE HONORABLE EMILY MAXWELL, DISTRICT JUDGE.

¶0 Legal representative of nursing home resident brought medical negligence action against nursing home arising from resident's care. District Court granted nursing home's motion to compel arbitration and legal representative appealed. We retained the matter and now affirm the judgment of the district court.

AFFIRMED.

Donald E. Smolen, II, Dustin Vanderhoof, and Michael F. Smith, Smolen Law, PLLC, Tulsa, Oklahoma, for Plaintiff/Appellant.

Brandon L. Buchanan and Kate N. Dodoo, McAfee & Taft, P.C., Oklahoma City, Oklahoma for Defendant/Appellee.

WINCHESTER, J.

¶1 Plaintiff Beverly Thompson (Legal Representative), as next friend of Charlene Hughes (Decedent), a patient at a nursing facility run by Heartway Corporation d/b/a Memorial Heights Nursing Center (Nursing Center), filed suit against Nursing Center for medical negligence in the care of Decedent. Nursing Center filed a Motion to Compel Arbitration pursuant to an agreement entered into with Legal Representative for Decedent's admission into the Center. The district court granted the Center's Motion to Compel Arbitration and this appeal followed. We retained the matter to address an apparent conflict between Bruner v. Timberlane Manor Ltd. P'ship, 2006 OK 90155 P.3d 16andMarmet Health Care Ctr., Inc. v. Brown, 565 U.S. 530, 132 S.Ct. 1201, 182 L.Ed.2d 42 (2012). We agree with the district court's ruling compelling arbitration in this matter.

FACTUAL AND PROCEDURAL BACKGROUND

¶2 Decedent, a resident of Oklahoma, was admitted to Nursing Center in July 2012. Nursing Center, as alleged in the Petition, is "a foreign corporation incorporated under the laws of the State of Texas and headquartered in Texas. Nursing Center operates medical facilities in Oklahoma and Texas.

¶3 Legal Representative, the daughter of Decedent, provided a durable Power of Attorney (POA) to Nursing Center. The POA granted her the authority to act on behalf of Decedent and specifically provided authorization for her to "make all necessary arrangements, contractual or otherwise for [Decedent] at any hospital, hospice, nursing home, convalescent home or similar establishment, and to assure that all of [Decedent's] essential needs are provided for at such a facility." In that capacity, Legal Representative executed several admissions documents (Documents) for Decedent to be admitted as a patient to Nursing Center. Legal Representative signed an Acknowledgement which provided:

I, Beverly Hughes Thompson, (the "Legal Representative") have been appointed or designated to act as the legal representative for Charlene Hughes (the "Resident"), who is being admitted to the Care Center pursuant to the terms and conditions of an Admission and Financial Agreement, and all documents incorporated therein (the "Documents"). By signing this acknowledgement, I hereby agree to be bound as the legal representative of the Resident to the Documents.

¶4 Among the Documents was an Agreement to Arbitrate (Agreement). 

¶5 Legal Representative brought this lawsuit alleging negligence in the medical treatment of Decedent during her two month stay at Nursing Center. Nursing Center responded with a Motion to Compel Arbitration and requested a hearing on the matter. Legal Representative's counsel had a conflict with the hearing date and requested a continuance. The continuance was granted, and the hearing was rescheduled for June 7, 2023. The parties disagree about the substance of the hearing held by the district court on that date. Legal Representative disputes an evidentiary hearing was held at all and alleges the hearing was nothing more than a "brief conference." To the contrary, Nursing Center claims the judge conducted a hearing on its motion to compel, considered the evidence, including affidavits, and that each party had the opportunity to present witnesses. The record reflects a hearing was held as evidenced by the trial court's order granting Nursing Center's Motion to Compel. The Order provides, in relevant part:

The court having heard argument of counsel and considered the briefs, hereby stays the judicial proceeding herein, and grants the Defendant's Motion to Compel Arbitration.

The Court finds there was an agreement signed by an agent of the Defendant, and person with authority as Power of Attorney. The terms of the Arbitration Agreement were that the FAA would apply.

The case at bar is very similar to that in Weaver v. Doe, 2016 OK CIV APP 30371 P.3d 1170Weaver that requires arbitration, notwithstanding provisions of the Oklahoma Nursing Home Act prohibiting waivers of the right to commence and [sic] action and right to a jury trial. See also Marmet Health Care Center, Inc. v. Brown, 565 U.S. 530 (2012).

Further, there is "clear precedent that when the validity and enforceability of the entire agreement are contested, these questions are to be resolved by the arbitrator, not by the court." Weaver at ¶ 28.

This appeal followed and we retained the matter.

STANDARD OF REVIEW

¶6 Whether a valid, enforceable agreement to arbitrate the claims in this case exists is a question of law to be reviewed by a de novo standard and without deference to the lower court. Oklahoma Oncology & Hematology, P.C. v. U.S. Oncology, Inc., 2007 OK 12160 P.3d 936Rogers v. Dell Computer Corp., 2005 OK 51138 P.3d 826De novo review of the record involves a plenary, independent and non-deferential examination of the district court's legal rulings. Dobson Tel. Co. v. Okla. Corp. Comm'n, 2019 OK 27441 P.3d 147Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24--25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).

¶7 Sometimes, a motion to compel arbitration may present questions of fact and law as to the existence or the enforceability of an arbitration agreement. See, Rogers, ¶¶ 15--17, 138 P.3d at 830--831 (delineating procedures on applications to compel arbitration that present questions of fact or law relating to the existence or enforcement of an arbitration agreement). For example, whether a transaction involves interstate commerce under the FAA is often a mixed question of fact and law. Oklahoma Oncology, ¶ 20, 160 P.3d at 944, citing Citizens Bank v. Alafabco, Inc., 539 U.S. 52, 123 S.Ct. 2037, 156 L.Ed.2d 46 (2003). Where the facts are controverted, mixed questions of fact and law may require deferential review standards. Feightner v. Bank of Okla., 2003 OK 2065 P.3d 624

¶8 The question as to whether the district court, before referring all claims to arbitration, should have conducted an evidentiary hearing relating to the existence of a valid, enforceable arbitration agreement is a procedural question left to the discretion of the district court, Rogers, ¶ 17, 138 P.3d at 830--831. The district court's ruling thereon will not be disturbed on appeal in the absence of clear abuse. Eskridge v. Ladd, 1991 OK 3811 P.2d 587

¶9 Here, Legal Representative, although disputing that Nursing Center is involved in interstate commerce, did not controvert the evidence submitted by Nursing Center in support of its contention that the matter involves interstate commerce under the FAA. Further, it is undisputed there is diversity of citizenship between the parties. Where the facts are undisputed, the controversy remains a question of law. Feightner, ¶ 3, 65 P.3d at 627. Accordingly, we will review this matter de novo.

DISCUSSION

¶10 When a motion to compel arbitration has been filed "showing an agreement to arbitrate and alleging another person's refusal to arbitrate ... the court shall proceed summarily to decide the issue and order the parties to arbitrate unless it finds that there is no enforceable agreement to arbitrate." 12 O.S.2021, § 1858Oklahoma Oncology, ¶ 22, 160 P.3d 936

¶11 An essential element of a contract is mutual consent. 15 O.S.2021, § 2Oklahoma Oncology, ¶ 22, 160 P.3d at 944. Defenses such as fraud, duress and unconscionability may be raised to invalidate an agreement to arbitrate. See 12 O.S.2021 § 1857

¶12 In this case, Nursing Center filed a motion to compel arbitration pursuant to the Federal Arbitration Act ("FAA") and the express terms of the parties' Agreement to Arbitrate. Legal Representative countered that the Agreement: (1) was not validly executed by Nursing Center and is, thus, unenforceable; (2) violates Oklahoma's Nursing Home Care Act (NHCA) prohibition against arbitration agreements in the nursing home setting; (3) does not affect interstate commerce as required by the FAA; and (4) is unconscionable and obtained through fraud so as to render it unenforceable. In 2006, this Court previously addressed the dispositive issue of whether the prohibition against arbitration in the NHCA is preempted by the FAA in Bruner v. Timberlane Manor Ltd. P'ship, 2006 OK 90155 P.3d 16Bruner's continued relevance in light of a subsequent ruling from the Supreme Court of the United States (SCOTUS) in Marmet Health Care Center, Inc. v. Brown, 565 U.S. 530, 132 S.Ct. 1201, 182 L.Ed.2d 42 (2012), concerning this same matter. We examine both cases below.

1. Validity of the Agreement's Execution

¶13 As a threshold determination, the Court must consider whether the parties executed a binding agreement. Legal Representative asserts Nursing Center did not validly execute the Agreement because it was signed by someone other than who was identified in the pre-printed signature block and, as such, there is not an enforceable Agreement. The trial court, after hearing arguments and reviewing the briefs, found that "there was an agreement signed by an agent of the Defendant, and person with authority as Power of Attorney." After reviewing the record, we agree.

¶14 The record reflects an Affidavit from Suzie Baucom, the Regional Director for Heartway Corporation, the parent company of Nursing Center. In her Affidavit, Baucom asserts that "Donna Richardson was employed as the Admissions Coordinator and had authority to act as Heartway's agent to sign and execute all admissions documents, including the Agreement to Arbitrate."
The Affidavit further states that "Plaintiff Beverly Thompson, L.P.N. was also employed at the Facility from approximately 2009 to 2013 as a Charge Nurse." Legal Representative did not dispute this evidence.

¶15 The signature block on the Agreement contains Ms. Richardson's signature as well as her title, "Marketing and Admission Coordinator," with a hand-drawn arrow from one to the other and through the printed block with "Sue May" on it. We find that the evidence is clear that the parties executed a valid Agreement and that the pre-printed, signature block misidentification of "Donna Richardson" as "Sue May" below Ms. Richardson's signature is immaterial to this finding. The lone case cited by Legal Representative in support of her contention, CC Restaurant, L.P. v. Olague, 633 S.W.3d 238, (Tx. App. 2021), is distinguishable in that the agreement was left unsigned completely by one of the parties. Here, there are two signatures to the agreement, one by an agent of Nursing Center and one by Legal Representative. Both signatories had authority to sign the Agreement and, as such, we find it was validly executed.

2. The FAA, NHCA and Interstate Commerce

¶16 We next address the issue of preemption and whether the Agreement is governed by the FAA. The FAA provides that agreements to arbitrate, evidencing a transaction involving commerce, are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Marmet Health Care Ctr., Inc. v. Brown, 565 U.S. 30, 132 S.Ct. 1201, 1203, 182 L.Ed.2d 42 (2012) (per curiam) (citations omitted). Pursuant to the Supremacy Clause of the United States Constitution, "the FAA preempts contrary state law." AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 131 S.Ct. 1740, 179 L.Ed.2d 742 (2011). By enacting the FAA, Congress "withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." Southland Corp. v. Keating, 465 U.S. 1, 10, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984).

¶17 Congress enacted the FAA "to ensure judicial enforcement of privately made agreements to arbitrate" and "to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 219--20, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985). In general terms, applicable state laws may invalidate arbitration agreements, but a state law may only affect arbitration agreements in the same way it affects contracts generally. Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996). That is to say, the Supreme Court has found that the FAA establishes "an equal-treatment principle: A court may invalidate an arbitration agreement based on 'generally applicable contract defenses' like fraud or unconscionability, but not on legal rules that 'apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue.'" Kindred Nursing Centers Ltd. Partnership v. Clark, 581 U.S. 246, 137 S.Ct. 142, 1197 L.Ed.2d 806 (2017) quoting Concepcion, 563 U.S. at 339. Accordingly, this Court is prohibited from applying any state statute that invalidates an arbitration agreement except where such contracts are otherwise found unenforceable.

¶18 Oklahoma statutory law has carved out a prohibition against arbitration of disputes involving nursing home negligence. The NHCA, 63 O.S.2021, § 1-1901et seq., was created primarily to protect the health, welfare, and safety of residents. 63 O.S.2021, § 1-1904

D. Any waiver by a resident or the legal representative of the resident of the right to commence an action under this section, whether oral or in writing, shall be null and void, and without legal force or effect.

E. Any party to an action brought under this section shall be entitled to a trial by jury and any waiver of the right to a trial by a jury, whether oral or in writing, prior to the commencement of an action, shall be null and void, and without legal force or effect.

63 O.S.2021, §1-1939

¶19 Against this backdrop, we must examine whether the NHCA is preempted by the FAA under the facts of this case. As stated above, legislation may not single out arbitration agreements for suspect status. Doctor's Assocs., Inc., 517 U.S. at 687. Rather, arbitration agreements must be placed "upon the same footing as other contracts." Id. Without question, the NHRC has singled out arbitration agreements by prohibiting them outright in the nursing home care setting.

¶20 In Bruner, the Court addressed this very conflict and upheld the NHCA to find that an arbitration agreement between a nursing home resident and the nursing facility charged with her care was not preempted by the FAA. The Court cited four reasons for its findings:

First, the arbitration agreement calls for Oklahoma law to govern. Second, Congress regulates nursing homes through its spending power rather than its power over interstate commerce. Third, Congress, in its nursing home regulations, left the states to devise the appropriate administrative or judicial review of nursing home residents' claims against nursing homes. Fourth, the evidence in this case is insufficient to connect the nursing home admission contract with interstate commerce under extant jurisprudence from the United States Supreme Court.

Bruner, ¶ 47, 155 P.3d at 32.

¶21 The record in Bruner reflects distinguishing provisions of the parties' arbitration agreement which specifically provided that Oklahoma law would govern. Id., ¶¶ 40-41, 155 P.3d at 30 ("...in at least eight different places, [the agreement] provide[s] that arbitration shall be governed by Oklahoma law."). Additionally, the "patient was an Oklahoma resident, the nursing home is an Oklahoma limited partnership with its principal place of business in Oklahoma, and the nursing home is licensed by Oklahoma." Id., ¶ 42, 155 P.3d at 31. The Court relied on this combination of facts to find that the nursing home admission contract involved a "profoundly local transaction" in which the evidence of interstate commerce "demonstrates a de minimus impact on interstate commerce." Id., ¶¶ 43-45, 155 P.3d at 31. Ultimately, the Court concluded that the local nature of the transaction compelled its finding that the FAA was not implicated and, therefore, did not preempt the NHCA prohibition on arbitration. Id., ¶ 47, 155 P.3d at 32.

¶22 After Bruner was decided, the Supreme Court struck down a California doctrine that declared unconscionable, and thus unenforceable, all arbitration clauses in consumer contracts containing class action waivers. See Concepcion, 563 U.S. at 352. Although the case did not involve nursing home care, the Court provided a simple rule for testing whether a state law is preempted by the FAA: "When state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA." Id., 563 U.S. at 341.

¶23 Not long after Concepcion was decided, the Supreme Court reinforced its FAA analysis with a unanimous decision in Marmet Health Care Center, Inc. v. Brown, 565 U.S. 530, 132 S.Ct. 1201, 182 L.Ed.2d 42 (2012)(per curiam), finding that the FAA preempts state anti-arbitration statutes in the nursing home care setting. In Marmet, the Court rejected a nearly identical anti-arbitration statute upheld by the West Virginia Supreme Court of Appeals on nearly identical bases as those relied upon in Bruner. The Court ruled that a categorical prohibition of the arbitration of a particular type of claim is contrary to the terms of the FAA and, as such, preempted. Id. at 533.

¶24 Marmet involved three, consolidated negligence suits against nursing homes in West Virginia Marmet involving a West Virginia rule that invalidated any pre-dispute agreement to arbitrate a personal injury or wrongful death claim against a nursing home. The suits were each brought by a family member who held power of attorney and had signed admission agreements on behalf of a resident, and those agreements also contained an arbitration clause. The West Virginia state court found that the FAA does not preempt state public policy against pre-dispute arbitration agreements that apply to personal injury or wrongful-death claims against nursing homes and declined to enforce the agreements. Id. at 532.

¶25 In a terse opinion vacating the West Virginia court opinion, SCOTUS held that both state and federal courts must enforce the FAA with respect to all arbitration agreements covered by that statute: "Here, the Supreme Court of Appeals of West Virginia, by misreading and disregarding the precedents of this Court interpreting the FAA, did not follow controlling federal law implementing that basic principle. The state court held unenforceable all pre-dispute arbitration agreements that apply to claims alleging personal injury or wrongful death against nursing homes." Id. The Court rejected West Virginia's categorical rule prohibiting arbitration of a particular type of claim as contrary to the terms and coverage of the FAA and instead held that the state court's "interpretation of the FAA was incorrect and inconsistent with clear instruction in the precedents of this Court." Id. No exception exists in the FAA that would exempt personal-injury or wrongful-death claims from its reach. Id. at 532-533. Accordingly, we are compelled to find that the FAA preempts the NHCA to the extent that it categorically prohibits the enforcement of valid arbitration agreements in the nursing home context.

¶26 Legal Representative asserts that even if the NHCA is found to be preempted, the Agreement herein does not substantially affect interstate commerce and, therefore, it simply does not trigger the FAA. She cites Bruner for the proposition that an arbitration agreement must first involve interstate commerce before the FAA applies. While this Court previously ruled in Bruner that arbitration agreements within a nursing home admissions contract were preempted by Oklahoma law and unenforceable, the Court's ruling was based on distinguishable facts and prior to the SCOTUS ruling in Marmet. Specifically, the parties in Bruner selected Oklahoma law to govern the arbitration agreement. The FAA was not cited anywhere in the Bruner agreement and, instead, Oklahoma law is specified repeatedly. To the contrary, the Agreement in the instant matter expressly provides that federal law and the FAA govern.

¶27 Legal Representative relies on Bruner to assert that the Agreement does not evidence a transaction involving interstate commerce. However, the FAA extends to transactions "in individual cases without showing any specific effect upon interstate commerce if in the aggregate the economic activity would represent a general practice ... subject to federal control." Citizens Bank v. Alafabco, Inc., 539 U.S. 52, 56--57, 123 S.Ct. 2037, 156 L.Ed.2d 46 (2003). In Citizens Bank, the Court recognized the term "involving commerce" in the FAA to be "the functional equivalent of the more familiar term 'affecting commerce'--words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power." (quoting Allied--Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 273--274, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995). Because the FAA provides for "the enforcement of arbitration agreements within the full reach of the Commerce Clause," Perry v. Thomas, 482 U.S. 483, 490, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987), it is perfectly clear that the FAA encompasses a wider range of transactions than those actually "in commerce"--that is, "within the flow of interstate commerce," Allied--Bruce Terminix Cos., supra, at 273, 115 S.Ct. 834 (internal quotation marks, citation, and emphasis omitted).

¶28 Legal Representative's claim that the arbitration agreement does not evidence a transaction involving interstate commerce is without merit or proof in rebuttal. Since Bruner was decided, a clear majority of courts, from both federal and state court levels, have held that nursing home care involves interstate commerce and invokes the applicability of the FAA governance over arbitration agreements. Indeed, two cases applying Oklahoma law, have examined the validity of an arbitration agreement in the nursing home context after Bruner. See Rainbow Health Care Center, Inc. v. Crutcher, 2008 WL 268321 (N.D. Okla. 2008) (applying Oklahoma law) and Weaver v. Doe, 2016 OK CIV APP 30371 P.3d 1170Bruner after Marmet). The courts in these cases acknowledge the general obligation under both Oklahoma and federal law to favor arbitration.

¶29 Applying Oklahoma law, the federal district court in Rainbow Health Care Center, Inc. v. Crutcher, No. 07--CV--194--JHP, slip op. at *7, 2008 WL 268321 (N.D.Okla. January 29, 2008), held that the NHCA's prohibition of arbitration agreements in nursing home admission agreements was preempted by the FAA. The case involved a dispute between a nursing home licensed to do business in the State of Oklahoma and the Oklahoma State Department of Health (OSDH) concerning the nursing home's admission agreement it executes with its residents upon their admission to the facility. The agreement contained an arbitration provision which provided that all disputes between the facility and its residents were subject to binding arbitration, governed by the FAA. The OSDH, relying on the anti-arbitration provision of the NHCA, threatened to revoke the facility's license unless it removed the arbitration provision from its resident admission agreements. The nursing facility filed suit in federal court seeking a declaration that the NHCA is preempted by the FAA as well as an injunction permanently enjoining OSDH from attempting to enforce the NHCA against it.

¶30 OSDH countered the nursing facility's arguments of preemption by asserting that the operation of a nursing home facility is a purely intrastate activity and, therefore, that the FAA is inapplicable. The federal court held that the FAA and the case law interpreting it have created a "national policy favoring enforcement of arbitration agreements" and that Congress never intended to carve out an exception to that broad policy that would allow "the state of Oklahoma to disfavor arbitration agreements in nursing home admission agreements." Rainbow, slip op. at *8.

¶31 In holding the NHCA preempted by the FAA, the federal court found the facts in Bruner distinguishable, citing that the parties in Bruner expressly selected Oklahoma law to govern the arbitration provisions and that the agreement made no mention of the FAA. Rainbow, slip op. at *6. In contrast, the arbitration provision in the Rainbow agreement, as well as in the instant matter, specifically stated that the agreement "shall be governed and interpreted under the [FAA]." Accordingly, the court concluded that the "rationale upon which the Bruner court based its holding is inapplicable to the facts set forth in this matter." Id.

¶32 Additionally, the federal court rejected the Bruner Court's characterization of the nursing home's evidence of interstate commerce as a local transaction that had only a "de minimus impact" on interstate commerce. Id. Considering the Supreme Court's prior determination that the FAA "reaches as much commercial activity as constitutionally permissible," the court concluded that similar evidence of interstate activity provided by the nursing home was sufficient to classify the care as involving "interstate commerce." Rainbow, slip op. at *5. The court rejected the suggestion that the admission agreement in that case did not involve interstate commerce simply because the facility provided its goods and services wholly within Oklahoma:

... to the extent the Bruner court held that buying supplies from out of state vendors did not constitute interstate commerce, this Court cannot reach a similar conclusion. When applying Supreme Court precedent like Katzenbach-which delineate the broadest possible reach of Congress's Commerce Clause power-this Court must conclude that the care and services provided by Rainbow to its residents affect interstate commerce in a substantial way.

Id., citing Katzenbach v. McClung, 379 U.S. 294 (1964).

¶33 The court emphasized that, when a person chose the facility as the provider of his or her nursing home care, that person was entering into an agreement with the facility whereby the facility was to provide that person with food, medicine, shelter, and medical care, among other things. Id. The court noted that the facility obtained food, medicine, and durable medical supplies from vendors in Texas, Kentucky, Maryland, and other states. Id. Under those circumstances, the court found the admissions agreements satisfied the "involving interstate commerce" requirement for the FAA to apply. Rainbow, slip op. at *7.

¶34 The Oklahoma Court of Civil Appeals decided a similar matter after the Supreme Court handed down its decision in Marmet. See Weaver v. Doe, 2016 OK CIV APP 30371 P.3d 1170Weaver, a legal representative acting under power of attorney authority, sued the nursing home for the negligent care of her mother. The nursing home sought to compel arbitration pursuant to the arbitration agreement legal representative entered into on behalf of her mother upon her admission to the nursing home. The trial court denied the nursing home's motion. On appeal, the Court of Civil Appeals (COCA) reversed the trial court and found that the arbitration agreements were not preempted by the FAA and that the representative's claims must be submitted to arbitration. Id., ¶ 26, 371 P.3d at 1177.

¶35 The legal representative in Weaver relied on the holding in Bruner to argue the arbitration agreement is unenforceable under the NHCA. In response, the nursing home cited Marmet to argue that the FAA unequivocally preempts the NHCA. COCA agreed with the nursing home and also distinguished the arbitration agreement therein from the one in Bruner noting that the agreement at issue "explicitly states the FAA applies and preempts any inconsistent state law." Weaver, ¶ 26, 371 P.3d at 1177. COCA reversed the trial court, finding:

Marmet makes clear that the categorical prohibition against arbitration agreements like the one here under the Oklahoma NHCA ... is displaced by the FAA. We must conclude that [the NHCA prohibition against arbitration agreements], and the holding of Bruner that this provision is not pre-empted by the FAA, are inconsistent with Marmet and cannot be applied in this case.

Id., ¶ 25, 371 P.3d at 1177.

¶36 In light of the overwhelming authority cited herein, we are compelled to find that in cases where the FAA applies, it preempts the NHCA's categorical prohibition of the enforcement of valid arbitration agreements in the nursing home context. We conclude that to the extent Bruner v. Timberlane Manor Ltd. P'ship, 2006 OK 90155 P.3d 16Bruner holding must be strictly limited to cases where the facts reflect a purely local transaction and neither the FAA nor interstate commerce is implicated. To the contrary, we find the record in this case reflects a transaction involving interstate commerce and, as such, the FAA applies to preempt NHCA's prohibition on arbitration.

3. Unconscionability of the Agreement to Arbitrate

¶37 Finally, Legal Representative contends that even if the arbitration agreement is valid, it is, nonetheless, unenforceable as unconscionable. Legal Representative's argument of unconscionability is a generic catch-all objection to the general characteristics of arbitration. She argues she was provided a packet of documents that she believed she had to sign to secure her mother's admission to Nursing Center and that the documents are one-sided in favor of Nursing Center because: (1) the Agreement purports to cover any controversy or claim arising out of the care of or services (or alleged lack thereof) provided by Company; (2) the Agreement compels Legal Representative to bear half the costs of arbitration; (3) she was misled into signing all the documents within the package, did not realize she was signing an Agreement to Arbitrate and was not provided with copies of the documents; and finally, (4) she had zero bargaining power.

¶38 Oklahoma case law finds that in order for a contract to be unconscionable, it must be one "which no person in his senses, not under delusion would make, on the one hand, and which no fair and honest man would accept on the other." Barnes v. Helfenbein, 1976 OK 33548 P.2d 1014Barnes, the Court, in finding the agreement between a banker and its customer was not unconscionable, held:

The parties in the exercise of their inherent contractual rights may make whatever bargain they desire. It is the duty of the court to enforce valid voluntary contracts. The court will not interfere with the contract of parties in the absence of fraud, duress, undue influence or mistake. Courts are concerned only with the legality of the contract. The fairness or unfairness, folly or wisdom, or inequality of contracts are questions exclusively within the rights of the parties to adjust at the time the contract is made. The courts have no authority to relieve parties of their solemn obligations assumed under contracts in the absence of fraud, duress, undue influence or mistake.

Id.

¶39 Legal Representative relies heavily on this Court's ruling in Sutton v. David Stanley Chevrolet, Inc., 2020 OK 87475 P.3d 847Id., ¶ 23, 475 P.3d at 858. The two-page purchase agreement was divided into four separate sections, each with its own signature line and under the "trade-in vehicle" section was a dispute resolution clause in small, red font. Id. The finance manager informed the plaintiff that the purchase agreement was just for "verifying his personal information, the vehicle information on both vehicles, and how much he would be paying." It was undisputed that the parties did not discuss the dispute resolution clause contained therein nor did plaintiff read the purchase agreement before signing. Under these facts, the Court held that a duty to disclose the arbitration clause arose because of the manager's misrepresentations and that the failure to do so rendered the agreement invalid. Id, ¶ 21, 475 P.3d at 858.

¶40 There are important distinctions between the present case and Sutton. First, the Sutton court found specific evidence of misrepresentation in the parties' discussion of the purchase agreement. Here, Legal Representative denies Nursing Center explained the Agreement to her at all. Additionally, Legal Representative was provided a set of admissions documents to sign which included an Agreement to Arbitrate that she was free to reject or accept. The Agreement stood on its own as an independent document within the larger packet of Admission Documents, unlike the "hidden" provision in Sutton. The two and half page document herein was clearly identified as "Agreement to Arbitrate" and in bold language directly above Legal Representative's signature was the language: "Both parties to this Agreement have read this entire Agreement, fully understand all of the terms set forth herein and are in agreement with all of its terms." (Emphasis in original).

¶41 Here, in addition to the Agreement, Legal Representative also signed and initialed a separate document entitled "Acknowlegement (sic) of Oklahoma Admission Information" which identified the various documents provided to her as part of the Admissions Package: "The Resident acknowledges that he or she has received a copy of the Package and that the Resident fully understands its contents. Specifically, the Resident acknowledges that he or she has had the following information verbally explained in a language understood by the Resident and that he or she has received a written copy of the same. Please initial the lines below." The Agreement to Arbitrate was included within the list of items provided. As evidence that Legal Representative read this page, there was an arrow drawn around the list of items provided which indicated her acknowledgement of all items and that she intended to cover all of the items listed with one initial rather than initialing each item line by line. At the bottom of the page, Legal Representative signed and dated the document in her capacity as the Power of Attorney for Decedent. It cannot be disputed that the Agreement, a freestanding document, was in any way hidden from Legal Representative.

¶42 Under the circumstances, absent fraud which was initially generally alleged but no evidence thereof ever provided, Legal Representative's suggestion of failure to read or understand the agreement given to her, does not free her from the duty to do so. Mayfield v. Fid. State Bank of Cleveland, 1926 OK 664249 P. 136See, e.g., Miller v. Cotter, 863 N.E.2d 537, 546-547 (Mass. 2007)(a party's failure to read or understand a contract provision does not free the party from obligations nor is there particular concern that private disputes between nursing homes and patients should be exempt from the general policy favoring arbitration). Here, there is no evidence Legal Representative did not assent to the terms of the Agreement that she signed, and she readily admits she executed the documents in question. Accordingly, we do not find the Agreement is unconscionable. 

4. Additional Concerns

¶43 When a motion to compel arbitration has been filed, either party may request an evidentiary hearing to allow the court to resolve any factual issues regarding the agreement to arbitrate. Rogers v. Dell Computer Corp., 2005 OK 51138 P.3d 82612 O.S.2021, §§ 1851Id., ¶ 15, 138 P.3d at 830, citing Volt v. Board of Trustees of the Leland Stanford Jr. Univ., 489 U.S. 468, 476, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989)(federal policy favoring arbitration does not command a certain set of procedural rules). Under the OUAA, an application to compel arbitration must be "heard in the manner provided by law or rule of court for making and hearing motions." 12 O.S.2021, § 1856

Motions raising fact issues shall be verified by a person having knowledge of the facts, if possible; otherwise, a verified statement by counsel of what the proof will show will suffice until a hearing or stipulation can be provided. Every motion shall be accompanied by a concise brief or a list of authorities upon which a movant relies.

12 O.S.Supp.2013, Ch. 2, App., Rules of the District Courts, Rule 4(c). The decision to grant a hearing is within the trial court's discretion; however, where there is a factual dispute, we have noted that "the better procedure is for the district court to conduct an evidentiary hearing before entering an order." Rogers, ¶ 15, 138 P.3d at 830. Such a hearing comports with notions of procedural due process, but the trial court should also be mindful of the state and federal policies favoring arbitration and any ambiguity is resolved in favor of arbitration. Id. 

¶44 The record reflects that Nursing Center requested an evidentiary hearing in this case and, after some continuances, the hearing was held. Although Legal Representative alleges there was no evidentiary hearing, but instead a brief meeting, the trial court stated that the court heard and considered the arguments and briefs of counsel in her order compelling arbitration. Nursing Center's Motion to Compel brief attached various evidentiary documents including an Affidavit from Suzie Baucom, the Regional Director for Nursing Center. Baucom stated that residents of Nursing Center enter into admission agreements "for the provision of food, medicine, shelter, medical care and other essential services." She further attested to the nature of Nursing Center's interstate commerce, asserting that many goods and services provided to or for the Nursing Center and its residents were obtained from companies located outside the state of Oklahoma. She provided a detailed breakdown, including receipts, of the company's use of interstate commerce to conduct business and provided care for its residents. Legal Representative provided no documentation to refute Nursing Center's evidence and nothing in the record indicates she asked to present more evidence prior to or at the hearing on the motion. Accordingly, we do not find any error in the district court's method of deciding the motion to compel arbitration.

CONCLUSION

¶45 In conclusion, we find the NHCA's prohibition against arbitration is preempted by the FAA in this case. The parties' arbitration agreement expressly provided for the application of the FAA and the record sufficiently reflected the involvement of interstate commerce. The decision of the district court is affirmed. The request for oral argument is denied.

AFFIRMED.

CONCUR: ROWE, C.J., KUEHN, V.C.J., WINCHESTER, EDMONDSON, COMBS (BY SEPARATE WRITING), GURICH, DARBY, KANE, AND JETT, JJ.

FOOTNOTES

Weaver at ¶ 28, provides: "...there is 'clear precedent that when the validity and enforceability of the entire agreement are contested, these questions are to be resolved by the arbitrator, not by the court.'" Nevertheless, because we review this matter de novo, we conclude Legal Representative's assertion of unconscionability has no merit.

COMBS, J., with whom GURICH, J., joins, concurring specially:

¶1 I concur in the majority's decision to affirm the district court's order granting Defendant/Appellee's motion to compel arbitration in this case, but write separately to make it clear that this opinion should not be read to require the enforcement of nursing home arbitration agreements where a wrongful death claim is alleged. Plaintiff/Appellant's petition did not allege wrongful death, no party to this litigation has ever filed a suggestion of death or a motion to substitute the successors or representatives of the deceased pursuant to section 2025(A) of the Oklahoma Pleading Code, and Plaintiff/Appellant has never filed a motion to amend the pleadings pursuant to section 2015 of the Pleading Code to include a wrongful death claim. See generally 12 O.S.2024, §§ 2015see Okla. Const. art. XXIII, § 7.

 
 
 
 
 
 
 
 
 
 The Oklahoma Supreme Court
 2100 N. Lincoln Blvd., Suite 1
 Oklahoma City, OK 73105